**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

FEBRONIA L. NISSAN,

    Plaintiff,

v.                                              Civil No. 04-CV-10200-BC

COMMISSIONER OF                     DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                      MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.     REPORT**

    **A.      Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 35 years of age at the time of the most recent administrative hearing and has completed a high school education and two years of college. (Tr. at 224, 62.) Plaintiff's relevant work history includes work as a cashier and as a machine operator. (Tr. at 57, 224.)

Plaintiff filed the instant claim on July 30, 2002, alleging that she became unable to work on January 4, 2000. (Tr. at 46-48.) The claim was denied initially, and in denying Plaintiff's claim, the Defendant Commissioner considered carpal tunnel syndrome as a possible basis of disability. (Tr. at 28-32.)

On December 11, 2003, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Melvyn B. Kalt, who considered the case *de novo*. In a decision dated April 7, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 11-22.) Plaintiff requested a review of this decision on April 26, 2004. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner on June 17, 2004, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On August 18, 2004, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts

relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson*

*v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security.  The test is as follows:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

D.   **Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that after a series of examinations and abnormal electrodiagnostic test results (Tr. at 139-52), in early January 2000, Plaintiff underwent carpal tunnel release surgery to the left wrist performed by Dr. Jeffrey Hall, M.D.  (Tr. at 125.)   Thereafter, Plaintiff underwent physical therapy.  A progress report prepared in early March 2000 indicated that the range of motion of Plaintiff's left wrist and fingers had increased between 7% and 16% and were "within normal limits," that Plaintiff's left grip strength had increased by 11 pounds, and that there had been a slight decrease in complaints of pain.  (Tr. at 106.)

In mid-June 2000, Plaintiff underwent carpal tunnel release surgery to the right wrist, again performed by Dr. Hall.  (Tr. at 123.)  Electromyographic studies performed in mid-January 2001 revealed results "in the normal range" for Plaintiff's left wrist, but revealed that the right wrist had "mild sensory slowing" similar to that of a test performed approximately two months earlier.  (Tr. at 153.)

In early December 2000, Plaintiff was seen at the request of an insurance company by Dr. Steven Kushner, D.O.  The doctor reported that range of motion of the shoulders and elbows was within normal limits. (Tr. at 169.) Neurological examination of Plaintiff's wrists was "essentially within normal limits," and sensory testing revealed diminished sensation over both median and ulnar nerves.  (*Id*.)  The doctor stated his belief that Plaintiff "has a multitude of subjective complaints and no localizing findings[.]" (Tr. at 170.) The doctor recommended that Plaintiff "go back to work without restrictions."  (*Id*.)

In late July 2000, Plaintiff was examined at the request of an insurance company by Dr. Ronald Rusko, M.D.  The doctor reported that Plaintiff evidenced full range of motion in the

6

shoulders and elbows. (Tr. at 182.) The doctor reported that Plaintiff had tenderness on the underside of both wrists and slight swelling on the right side as a result of the recent surgery to that wrist. Scars from both carpal tunnel release surgeries were described as well healed. (Tr. at 183.) Nerve functions in both wrists were found to be intact, although sensation was decreased in the thumb, index and middle fingers of both hands. (Tr. at 184.) Grip strength was measured as 29 for the right hand and 50 for the left hand. The doctor stated that from his review of Plaintiff's preoperative medical records she "does appear to have an advanced carpal tunnel syndrome in both hands." (*Id.*) After noting the surgeries to both hands, the doctor stated that "the right side is of recent surgical intervention and, therefore, the patient has more symptoms in that hand." (*Id.*) The doctor felt that Plaintiff should continue with physical therapy treatments and that additional myographic testing was in order. (*Id.*)

With regard to Plaintiff's ability to work, the doctor felt that she should not return to her prior job but "would be able to return to lighter work with the use of protective splints for both hands, but should avoid any heavy pulling, pushing or lifting and should avoid vibratory tools[.]" (Tr. at 185.) Thereafter, Dr. Rusko issued a series of "interim progress reports" essentially reiterating these limitations. (Tr. at 186-96.)

In early September 2002, Plaintiff was examined at the request of the Disability Determination Service by Dr. Christopher Y. Chang. The doctor reported that prick sensation testing was decreased for both index fingers, deep tendon reflexes were equal for Plaintiff's arms and legs, and orthopedic tests for both wrists were positive. (Tr. at 202.) The doctor reported that the range of motion of Plaintiff's wrists, elbows and fingers was normal for both sides. (Tr. at 203-04.) Grip strength measured 64 for the right hand and 63 for the left. (Tr. at 206.)

7

In early June 2003, Dr. H. Elia prepared a handwritten statement in which he cited Plaintiff's carpal tunnel syndrome and surgical repair. (Tr. at 209.) The doctor felt that Plaintiff had difficulty with pain in her right shoulder and stated that she would not be able to work until August 2004. (*Id.*)

A statement of medical needs prepared on Plaintiff's behalf and submitted to the Michigan Family Independence Agency by Dr. Elia in late September 2003 stated that Plaintiff suffered from bilateral carpal tunnel syndrome and "can do only light job [sic] a few hours a week," which the doctor stated was 4 hours per day or 20 hours per week. (Tr. at 207.)

In early December 2003, Plaintiff underwent electromyographic testing performed by Dr. Alosachie, M.D. (Tr. at 210.) The doctor found "markedly severe" electrodiagnostic evidence of neuropathy in the left ulnar nerve across the elbow, as well as evidence of "significant denervation" in muscles of the left arm. The doctor found no evidence of left carpal tunnel syndrome. (Tr. at 211.)

At the administrative hearing, a vocational expert (VE) testified. He characterized Plaintiff's prior work as a machine operator to be unskilled and medium in exertion, and her work as a cashier was considered light and semi-skilled. (Tr. at 230.) In response to a hypothetical question presuming the use of the left arm for only the most rudimentary tasks, in a situation where others could assist in the completion of simple operations which involved no public contact, the VE described unskilled light exertion visual inspection jobs at the "low end" of the use of hands. (Tr. at 234-35.) The VE identified 15,000 such jobs at the light exertion level and 2,500 sedentary jobs. (*Id.*) The VE made reference to the Dictionary of Occupational Titles (DOT) with regard to gauging the use of Plaintiff's hands.

8

Subsequent to Plaintiff's testimony at the administrative hearing, the ALJ directed that Plaintiff undergo a psychological examination which was conducted in late January 2004 by Dr. Sung-Ran Cho, M.D. (Tr. at 214.) Plaintiff recounted to the doctor that she read magazines, took her son to preschool, and picked him up five days a week. (Tr. at 215.) The doctor reported that Plaintiff got upset because she could not undertake household chores as she would like. Plaintiff reported that she attended church regularly. The doctor felt that Plaintiff showed a moderate amount of spontaneity and productivity of her thought process. (*Id.*) Plaintiff denied suicidal or homicidal ideas or delusions. (Tr. at 216.) Plaintiff described panic attacks, depression over the injuries to her hands, and discord with her husband. (*Id.*) The doctor diagnosed recurrent severe major depression with psychotic features and panic disorder. (Tr. at 217.) He assessed a GAF[1] score of 45 to 50. The doctor felt that Plaintiff's prognosis was poor without psychiatric treatment. (*Id.*)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, although she had completed some unsuccessful attempts at work. (Tr. at 21.) At step two, the ALJ found that Plaintiff's depression and status post bilateral decompression surgery for carpal tunnel syndrome were "severe" within the meaning of the second sequential step. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met

---

[1]"Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A GAF Scale of 70 to 61 indicates some mild symptoms; a scale of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning; a scale of 41-50 indicates serious symptoms; and a scale of 31-40 indicates some impairment in reality testing or communication or a major impairment in several areas.

or equaled one of the listings in the regulations. At step four, the ALJ found that Plaintiff could not perform her past relevant work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 22.) Using the Commissioner's grid rules as a guide, the ALJ found that "there are a significant number of jobs in the national economy that she can perform." (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of unskilled light work. (Tr. at 21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

As to Plaintiff's claims of disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (I) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

20 C.F.R. § 404.1520a explains in detail the special procedure, and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404.1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id*. Under this procedure, the Commissioner must first make clinical findings, (i.e. the "A" criteria), as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A. Then the Commissioner must measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders, (i.e. the "B" criteria).

11

The "B" criteria identify four areas which are considered essential to the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. Under the second criterion, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. The third function, "concentration, persistence and pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. The final area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. (*Id.*).

If the first two "B" criteria receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and therefore cannot serve as the basis for a finding of disability. 20 C.F.R. §§ 404.1520a(c)(1) and 404.1521. If, on the other hand, the "B" criteria indicate that the mental impairment is severe, the Commissioner must then decide whether it meets or equals a listed mental disorder. 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the "B" criteria have been met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et seq*. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The findings of a psychologist are relevant in establishing the existence and severity of a mental

12

impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist. *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

In this case, as to the "A" criteria, the ALJ found the presence of a medically documented "affective disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. (*See* Tr. at 17.) Turning to the "B" criteria, the ALJ found that Plaintiff's mental impairment led to mild restrictions in daily living, moderate difficulties in maintaining social functioning, concentration, pace and persistence and no episodes of deterioration in work-like settings. (Tr. at 16.) Based on these findings, the ALJ concluded that Plaintiff's mental impairment was severe and engaged in the residual functional capacity analysis earlier described.

In order to find a "marked" limitation in daily activities, or a "marked" difficulty in maintaining social functioning, a plaintiff must show that the mental impairment "seriously interfere[s] with the ability to function independently, appropriately and affectively." *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988). In *Foster*, 853 F.2d at 488, plaintiff was diagnosed with a dysthymic disorder and depressed mood. The denial of plaintiff's claim for disability was upheld based on plaintiff's testimony that she was able to cook, wash dishes, and do her laundry.

In *Vaughn v. Sec'y of Health & Human Servs.*, No. 89-2259, 1990 WL 120967 (6th Cir. Mich., August 21, 1990), the denial of plaintiff's claim for benefits, based at least in part on mental impairments, was upheld where the record showed that although plaintiff had very low self-esteem and some mental retardation, he was nonetheless generally logical, cooperative, oriented, and capable of engaging in logical and abstract thought.

In *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990), the denial of plaintiff's claim for disability benefits based on mental impairments, was upheld where the record showed that plaintiff washed dishes, cooked, shopped, read, watched television, and drove.

13

In *Hogg v. Sullivan*, 987 F.2d 328, 333 (6th Cir. 1992), plaintiff was treated for depression and argued that this condition served as a proper basis for a finding of disability. The denial of this claim was upheld as the record indicated that plaintiff was able to care for herself and her son, maintain a regular schedule of daily activities, attend church, undertake vocational training, visit relatives, and drive.

In *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988), the ALJ found that plaintiff's condition met both the A and B criteria of Listed Impairment 12.04. At issue was the date of disability. In that case, there was testimony that plaintiff's wife had to assist him in bathing and putting on his clothes. The plaintiff twice tried to commit suicide, and plaintiff did nothing but lie in bed and watch television. *Cornette*, 869 F.2d at 264.

In *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), the court reversed a finding of nondisability and held that plaintiff there met both the A and B criteria of Listed Mental Impairment 12.08. In *Lankford*, there was abundant evidence of repeated suicide attempts, violent behavior and repeated lengthy hospitalizations for treatment of mental disorders.

The facts of this case, I suggest, are much closer to those of *Foster, Young, Vaughn,* and *Hogg*. *Cornette* and *Lankford*, on the other hand, stand in considerable contrast to the instant case. In daily activities summaries completed by Plaintiff in early August 2002, two years and two months after her last carpal tunnel release surgery, Plaintiff reported that she prepared breakfast and lunch for herself, her husband, and her child. (Tr. at 80.) Plaintiff reported that she undertook laundry, vacuuming, mopping, and washing dishes approximately twice a week for periods of four to five hours at a time, although she needed to take breaks and seek the assistance of her husband. (Tr. at 81.) Plaintiff reported that she shopped for food and clothing weekly, driving a distance of two to three miles to neighborhood stores. (*Id.*) Plaintiff reported that she enjoyed reading

newspapers and magazines, including the daily news and comic strips. (Tr. at 82.) She reported that she watched news and television game shows three to four hours a day, and occasionally went swimming. (*Id.*) Plaintiff reported that she saw or visited friends on a daily basis, that she would drive to see friends and would spend six to seven hours a day in these activities. (Tr. at 82-83.) Other activities reports indicate that Plaintiff can walk up to one-half mile, stand for six to eight hours, sit for between one and one-half to two hours, and lift and carry small amounts. (Tr. at 85.) These reports also indicate that Plaintiff stated that her impairments do not affect her ability to walk, climb stairs, or shop. (Tr. at 86-88.) In addition, there is in this record no indication that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992).

Although Plaintiff strenuously advances the findings of Dr. Cho, as indicative of mental impairments meeting the Commissioner's listings, counsel overlooks the fact that Dr. Cho is not a treating psychologist and the fact that in this circuit, the findings of a physician who examined a claimant at the request of the Commissioner are given less weight than those of treating physicians. *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1998). Moreover, I suggest that Dr. Cho's conclusions as to the "B" criteria are inconsistent with the activities described by Plaintiff during that examination as well as those described by Plaintiff in activity summaries which came two years after her carpal tunnel surgery.

As to Plaintiff's allegations of disabling physical impairment, although there is evidence to the contrary on this record, I suggest that substantial evidence nonetheless supports the findings of the ALJ. After Plaintiff's first carpal tunnel surgery, Plaintiff's treating physical therapist reported an improvement in grip strength and range of motion. (Tr. at 106.) After examination,

15

Dr. Rusko concluded that Plaintiff should continue physical therapy. (Tr. at 184.) On the basis of his examinations, he found Plaintiff capable of returning "to lighter work with the use of protective splints for both hands[.] (Tr. at 185.) He repeated this opinion thereafter on a series of occasions. (Tr. at 186-96.) Dr. Yang reported Plaintiff's grip strength as 64 for the right hand and 63 for the left. (Tr. at 206.) These objective measurements are greater than any previous such measurements appearing in the record.

The ALJ did not find Plaintiff fully credible. (Tr. at 18.) Social Security regulations prescribe a two-step process for evaluating subjective complaints of disabling impairment. The plaintiff must establish an underlying medical condition(s) and (1) there must be objective medical evidence to confirm the severity of the alleged condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the impairments alleged. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his or her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff suffered from impairments; however, he found that the severe and debilitating nature of Plaintiff's allegations were not fully credible and provided reasons for this conclusion, both as to Plaintiff's alleged physical and mental impairments. The issue is whether the ALJ's credibility determinations are supported by

16

substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and in particular, the repeated findings of Dr. Rusko (Tr. at 185-196) and the grip strength testing performed by Dr. Chang. (Tr. at 206). *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the record, I therefore conclude that the decision of ALJ Kalt, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

      s/ *Charles E. Binder*
      CHARLES E. BINDER
Dated: March 11, 2005      United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson, Assistant U.S. Attorney, and Kenneth F. Laritz, and served in the traditional manner on Honorable David M. Lawson.


Dated:  March 11, 2005      By    s/Jean L. Broucek
      Case Manager to Magistrate Judge Binder