UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FIBRONIA L. NISSAN,

        Plaintiff,                          Case Number 04-10200-BC
                                                    Honorable David M. Lawson
v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO AFFIRM THE DECISION OF THE COMMISSIONER**

The plaintiff filed the present action on August 18, 2004 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award her benefits. The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. Magistrate Judge Binder filed a report on March 11, 2005 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections, and has made a *de novo* review of the administrative record in light of the parties'

submissions. The plaintiff challenges the magistrate judge's suggestion that substantial evidence supports the Administrative Law Judge's (ALJ) determination that the plaintiff was not disabled as a result of her physical limitations, mental impairment, or a combination of the two. The plaintiff alleges that she cannot use her hands because of pain in her wrists, and there is evidence in the record from medical sources that she suffers from bilateral carpal tunnel syndrome, for which she underwent surgery. She also experiences depression, which a consulting psychiatrist said is disabling. However, the ALJ rejected these opinions and found that the plaintiff's subjective complaints of pain were not fully credible, and the magistrate judge suggested the ALJ's reasoning was proper. The plaintiff objects to this, and to the magistrate judge's characterization of the vocational expert's testimony concerning the extent of the plaintiff's functional capacity to use her hands in the jobs that are available.

The plaintiff, who is now thirty-six, applied for a period of disability and disability insurance benefits on July 30, 2002, when she was thirty-three years old. The plaintiff had worked as a machine operator and a cashier. She has a high school education and two years of college. The administrative record suggests that the plaintiff was working at Newcor Deco Division in April 1999 when she injured her wrists. She was diagnosed with carpal tunnel syndrome and treated conservatively by Dr. Jeffrey Hall, a hand specialist, with little improvement. Dr. Hall then performed a carpal tunnel release procedure on the left wrist on January 4, 2000 and on the right wrist on June 27, 2000. The plaintiff last worked on January 4, 2000, which is the date she alleges her disability began as a result of carpal tunnel syndrome.

The plaintiff's application for disability insurance benefits was denied initially, and she made a timely request for an administrative hearing. On December 11, 2003, she appeared before

ALJ Melvyn B. Kalt when she was thirty-five years old. After the hearing, the ALJ referred the plaintiff for a consultative examination by a psychiatrist because she testified that she was depressed and had received counseling for that ailment. ALJ Kalt then filed a decision on April 7, 2004 in which he found the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since January 4, 2000, although subsequently she had made some unsuccessful attempts at work (step one); the plaintiff suffered from depression and status post bilateral carpal tunnel decompression surgery, impairments which were "severe" within the meaning of the Social Security Act (step two); neither of these impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform her previous work as a machine operator or cashier, which was characterized as semiskilled and requiring medium and light exertion, respectively (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a range of unskilled, light work. He found that the plaintiff could lift twenty pounds occasionally; sit, stand or walk for eight hours in a work day; push and pull with nearly complete restriction in the left upper extremity; perform postural activities frequently; perform manipulative functions occasionally; see, hear and speak without limitation; and perform work in any environment. The ALJ further found that the plaintiff mentally was able to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers although her contact with them should be limited; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. A vocational expert testified that several jobs

fit within these limitations, including visual inspector and packager, and the ALJ found that those jobs existed in significant numbers in the regional economy. Using the Commissioner's medical vocational guidelines as a framework, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.20 and 202.21, the ALJ found that the plaintiff was not disabled.

The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1053 (6th Cir. 1983). The reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106, 108 (6th Cir. 1989). As the magistrate judge observed, the substantial evidence standard "presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (internal quotes and citations omitted).

However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial

evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 388 (internal quotes and citations omitted). *See also Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000).

With respect to her physical impairments, the plaintiff testified that she is unable to use her hands for work because of severe pain. Although subjective complaints of pain may be sufficient to support a claim of disability, *see Glass v. Sec'y of Health, Educ. & Welfare,* 517 F.2d 224, 225 (6th Cir. 1975), Congress has also stated that "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain." 42 U.S.C. § 423(d)(5)(A). The Sixth Circuit has prescribed an analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986). Those requirements are reflected in the Secretary's regulations. Under 20 C.F.R. § 404.1529(b) (1995), the plaintiff must establish an underlying medical condition and then show either (1) that objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) the medical condition, objectively determined, is at a level of severity which can reasonably be expected to give rise to the alleged pain. If the plaintiff satisfies this burden, the ALJ must then evaluate the intensity and persistence of the plaintiff's pain symptoms in light of objective medical evidence including the

-5-

activity which precipitates or aggravates the plaintiff's symptoms, the plaintiff's daily activities, the intensity and duration of her symptoms, and medications, treatment and other means to relieve the symptoms. 20 C.F.R. § 404.1529(c) (1995).

The ALJ found that the plaintiff's complaints of disabling pain were not fully credible because they were inconsistent with some of the medical reports and her description of her own activities. The plaintiff points to contrary evidence from physicians and medical test results that confirm the conditions in her wrists that could cause the pain of which she complains. However, there is other evidence in the record, well summarized by the magistrate judge, that supports a finding that the plaintiff should be able to engage in activity consistent with the residual functional capacity found by the ALJ. For instance, consulting hand specialist Ronald Rusko, M.D. stated on July 31, 2000 that the plaintiff "would be able to return to lighter work with the use of protective splints for both hands, but should avoid any heavy pulling, pushing or lifting and should avoid vibratory tools with no press work." Tr. at 185. Another examining hand specialist, Dr. Steven Kushner, wrote on December 1, 2000 that the plaintiff's decompression surgery on the right and left sides was "well healed," and although she made many subjective complaints, there were "no localized findings, nothing that specifically reflects any sequelae from surgery done by Dr. Hall." Tr. at 170. He recommended that she "go back to work without restrictions." *Ibid*. An electrodiagnostic study performed on October 4, 2000 "reveal[ed] mild residual sensory slowing at the carpal tunnel areas on both sides. The motor latencies at the carpal tunnel areas on both sides are in the normal range." Tr. at 154.

The ALJ chose to accept this evidence over the opinions of other examiners, which were not well documented, specifically those of Dr. Hilal Elia, Tr. at 207, 209, and Dr. Iyad Alosachie, Tr.

at 212.  Based on that evidence, and his observation of the plaintiff's in-person testimony, the ALJ chose the opinions of physicians he believed were better reasoned and he drew inferences that were inconsistent with the plaintiff's assertions.  The responsibility for these choices is committed to the ALJ under the system ordained by Congress.  The Sixth Circuit has stated that the role of the Court "is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony."  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  In evaluating a claimant's complaints of pain, the ALJ quite properly may consider the claimant's credibility.  *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).  In assessing the credibility of a witness, personal observations are important.  In fact, it is one of the reasons underlying the preference for live testimony.  *See* 2 *McCormick on Evidence* § 245, at 94 (4th ed. 1992); *cf. Ohio v. Roberts,* 448 U.S. 56, 63-64 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).  Thus, an ALJ, who has observed a witness' demeanor while testifying, should be afforded deference when his or her credibility findings are assessed.  *See Jones v. Comm'r of Social Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987).  The Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Rather, the Court's review is confined to determining whether the correct legal standard was applied, and whether the findings are supported by substantial evidence on the whole record.  *See Wright,* 321 F.3d at 614.  The Court agrees with the magistrate judge's assessment that substantial evidence supported the ALJ's assessment of the plaintiff's physical impairment.

Investigation of the plaintiff's mental impairment was provoked by her testimony at the administrative hearing that she was seeing a psychiatrist and a counselor at a clinic following the recent separation from her husband. *See* Tr. at 229. She never claimed a mental impairment in her application, and it was not considered at the initial stage of her application. The evidence in the administrative record of a mental impairment consists of a one-page form completed by Dr. Luay Haddad and a more lengthy report from a consultative examining psychiatrist, Dr. Sung-Ran Cho. Dr. Haddad states that the plaintiff is unable to work because of bipolar disorder, but the statement contains no explanation, clinical findings, or any support whatsoever for the naked opinion. *See* Tr. at 208. The ALJ gave no weight to this evidence, and having reviewed the record the Court cannot say that this choice was unreasonable. Even if Dr. Haddad were considered a treating source, the ALJ's reasons for rejecting the conclusion were set forth adequately and supported by the record. *See Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that 20 C.F.R. § 404.1527(d)(2) requires that a decision denying benefits "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record"); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that a treating physicians' opinions "are only given such deference when supported by objective clinical evidence").

Dr. Cho was not a treating source. His opinion supported a finding of a disabling mental impairment, and he states that the plaintiff's prognosis is "[p]oor without proper psychiatric treatment." Tr. at 218. But Dr. Cho also notes that the plaintiff's depression was aggravated by the recent separation from her husband, and he does not give a basis for concluding that the impairment would last for at least a year. It is a fundamental principle that the plaintiff bears the burden of proving entitlement to benefits under Title II of the Social Security Act, which means that the

-8-

plaintiff must establish that he suffers from a disability, as that term is defined in the Act. *See Boyse v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The magistrate judge also suggested that Dr. Cho's conclusions concerning the plaintiff's functional limitations, referencing the evaluation procedure set forth in 20 C.F.R. § 404.1520a, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C, were inconsistent with the plaintiff's own description of her abilities in her daily activities report. Certainly the ALJ could have accepted the opinion of Dr. Cho and found that the plaintiff's mental impairment was disabling, but he was not requited to do so. *See Mullen,* 800 F.2d at 545.

Finally, the plaintiff criticizes the hypothetical question posed to the vocational expert because it did not include all of the limitations described by the plaintiff. However, the rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his obligation to assess credibility and determine the facts. In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court has considered all of the plaintiff's objections to the report and finds them to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 9] is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 13] is **GRANTED**. The findings of the Commissioner are **AFFIRMED,** and the complaint is **DISMISSED**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: May 11, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 11, 2005.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS